UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case Number 04-20038

v.                                            Honorable David M. Lawson

MATTHEW TYLER,

        Defendant.
_____/

## ORDER DENYING MOTION TO REDUCE SENTENCE

Defendant Matthew Tyler has filed a motion asking the Court to reduce his sentence under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Tyler began serving a 30-year sentence in 2006, later reduced to 324 months, for conspiracy to distribute methamphetamine. He argues that a sentence reduction is justified by his health conditions (cardiac arrhythmia, hypertension, and chronic liver problems (hepatitis C)) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. He also contends that "the length of time he has served compared to his codefendants" is an additional factor that establishes extraordinary and compelling circumstances warranting his immediate release. Because Tyler has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Tyler was convicted by a jury of conspiracy to distribute 500 grams or more of methamphetamine and sentenced to prison for 360 months on November 13, 2006. His conviction and sentence were affirmed on appeal. The Court subsequently denied a motion to vacate the

conviction and sentence based on several claims of ineffective assistance. However, on December 14, 2015, the Court granted a motion for a sentence reduction based on retroactive amendments to the relevant drug offense sentencing guidelines, and the sentence was reduced to 324 months in prison. With credit for an extended period of pretrial detention, Tyler has served 196 months or around 60% of the 324-month custodial term, and he presently is confined at USP Big Sandy, in Inez, Kentucky, which is a high security facility that houses around 1,240 inmates. He is scheduled to be released on June 23, 2029. Tyler is 49 years old.

On June 10, 2021, Tyler filed through counsel a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The government filed an opposition supported by exhibits including prison disciplinary and medical records, and the defendant filed a reply.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates and three among staff at the Big Sandy facility, although 124 inmates and 115 staff previously were diagnosed and now have recovered. Reports indicate that no inmates or staff members have died. *See* https://www.bop.gov/coronavirus/. The BOP also recently began reporting data on the number of COVID-19 vaccinations that it has administered to staff and inmates. The most recent statistics for the Big Sandy facility indicate that 155 staff and 861 inmates fully have been vaccinated.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of

the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Tyler relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not

the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. The government contends, however, that the defendant cannot demonstrate an extraordinary medical risk justifying immediate release since he now admittedly fully has been vaccinated.

B.

Addressing the first element — extraordinary and compelling reasons — Tyler contends that he has several medical conditions that subject him to an elevated risk of complications from the highly-contagious novel coronavirus. He asserts that his cardiac arrhythmia, hypertension, and chronic liver problems (hepatitis C) all elevate his medical risk.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And the defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who

contracts the virus while in prison will face challenges in caring for himself. For these reasons, over the past year, numerous [federal] courts . . . have ordered the release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that a person's age and having certain medical conditions may elevate the risk of complications for anyone who is infected with the COVID-19 disease. *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021). The CDC recently overhauled the presentation of its guidance about a range of medical conditions. The newly revised guidance warns as a general matter that "[a]dults of any age with the following conditions can be more likely to get severely ill from COVID-19," and it explains that "[s]evere illness means that a person with COVID-19 may need: [h]ospitalization, [i]ntensive care, [a] ventilator to help them breathe, [o]r

- 6 -

they may even die." *Ibid.* Among the listed conditions, the CDC advises that having "[p]ulmonary hypertension (high blood pressure in the lungs) . . . can make you more likely to get severely ill from COVID-19." The guidance also advises that "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." *Ibid.* The guidance also acknowledges "chronic liver disease" as a significant medical risk factor. *Ibid.*

The government concedes that several of the defendant's health conditions qualify as recognized medical risk factors that are sufficient at least initially to support a showing of an extraordinary medical risk that could weigh in favor of compassionate release. For the purpose of this analysis it is sufficient to accept the defendant's position and assume for the sake of decision that the defendant has either two or three recognized medical factors that may pose a risk of severe consequences if he is infected with the coronavirus. However, the recognition that an inmate has one or more medical risk factors does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release. That is because another obviously and highly pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be nil. Recent reports indicate that the probability of infection at Big Sandy, although once somewhat high, now is extremely low, with no active cases among inmates and only three among staff (who presumably are not allowed to work at the facility while they are contagious or ill).

Further, even as the incidence of infection at Big Sandy dramatically has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid deployment of newly available vaccines, which so far have been administered fully to 155 staff and 861 inmates at the prison. The likelihood of a severe outbreak only further will diminish as the vaccination

program proceeds. Federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk. *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases).

Moreover, the defendant admits that he has received the full course of the two-dose Pfizer vaccine. The CDC advises that the Pfizer vaccine is extremely effective both at preventing infection and foreclosing serious complications for those who become infected, even if they also have underlying medical risk factors. *See* CDC: Pfizer-BioNTech COVID-19 Vaccine Overview and Safety, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html ("Based on evidence from clinical trials in people 16 years and older, the Pfizer-BioNTech vaccine was 95% effective at preventing laboratory-confirmed infection with the virus that causes COVID-19 in people who received two doses and had no evidence of being previously infected. . . . The vaccine was also highly effective in clinical trials at preventing COVID-19 among people of diverse age, sex, race, and ethnicity categories and among people with underlying medical conditions. Evidence shows mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings ― reducing the risk of COVID-19, including severe illness by 90% or more, among people who are fully vaccinated."). The CDC's August 19, 2021 update to its guidance on the vaccine also reports that the "FDA has granted full approval for [the] Pfizer-BioNTech (COMIRNATY) COVID-19 Vaccine." *Ibid.*

Even if the defendant has established sufficiently that he has one or more acknowledged risk factors, considering the present absence of any active cases among inmates and few among staff at his facility, as well as the ongoing vaccination program at Big Sandy, and the defendant's admission that he has received a highly effective and recently FDA approved vaccine, the

defendant has not shown that he presently faces an extraordinary and compelling medical risk that warrants his release.

The defendant also argues that the length of time he has served in prison relative to his co-defendants is an additional factor that weighs in favor of compassionate release. However, even if that feature could qualify as an extraordinary and compelling reason under section 3582(c)(1)(A)(i), the sentence disparity readily is explained by facts that distinguish the defendant's case, as the government points out. He was one of two defendants indicted who went to trial and who at sentencing did not establish his entitlement to an acceptance of responsibility guideline reduction. The government also points out that he was assessed with responsibility for the largest drug quantity among all of his co-defendants. He also had the longest and most serious prior criminal history, resulting in a significantly higher criminal history score. The defendant asserts that several of the co-defendants also were charged with homicide, and at one time were subject to a death penalty specification. However, none were convicted on murder charges. Moreover, one co-defendant received a substantially reduced sentence due to his cooperation with the government. The defendant has not cited any legal authority supporting the proposition that sentence disparities between co-defendants in light of all those distinguishing facts can qualify as an "extraordinary and compelling" reason for a sentence reduction.

Notably, the defendant raised a challenge to the substantive reasonableness of his sentence on direct appeal, and his arguments were rejected. The Sixth Circuit held after reviewing all of the pertinent facts that the long sentence amply was justified by the defendant's serious criminal history and the need to protect the public from the defendant's violent conduct that was disclosed in the trial testimony. *United States v. Tyler*, 271 F. App'x 505, 514 (6th Cir. 2008) ("In deciding what sentence to impose, the court noted that Tyler had a long history of criminal violations that

was reflected in his criminal history score. The court also examined the policy reasons for the lengthy sentence suggested by the Guidelines and added that the deterrent effect of a lengthy sentence would be appropriate to dissuade others from engaging in the lucrative business of drug-dealing and that it was important to incapacitate Tyler because of his violent propensities that were testified to at trial. As a result, the court imposed a sentence of 360 months, at the bottom of the Guidelines range. From this record, there is no evidence that the district court abused its discretion in imposing a 360–month sentence despite the nature of Tyler's prior convictions.").

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors.

III.

Tyler has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 720) is **DENIED**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated: August 26, 2021